THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELEONORE MANDENGUE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-09-3103 |
| ADT SECURITY SYSTEMS, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Eleonore Mandengue ("Mandengue") brings this action against Defendant ADT Security Systems, Inc. ("ADT"), her former employer, alleging that she was unlawfully discriminated against on the basis of her race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e, *et seq.*, her gender and national origin in violation of Title VII, her age pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and unlawfully retaliated against in violation of Title VII. Pending before this Court is ADT's Motion to Dismiss (Paper No. 5). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, Defendant ADT's Motion to Dismiss (Paper No. 5) is GRANTED in part, specifically as to Counts I, III and IV, and DENIED in part, specifically as to Counts II and V, with leave to amend Count VI of the complaint.

## BACKGROUND

In ruling on a motion to dismiss, "[t]he factual allegations in the Plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

1

Mandengue is an African-American woman, a native of Cameroon, West Africa, and was forty-nine years old at the time of her termination. Compl. ¶ 11 - 13. During the time at issue in this case, Defendant ADT employed Mandengue as an at-will sales representative. *Id.* ¶ 15. Mandengue alleges that Mr. Len Gill ("Gill"), her supervisor from August 2005 until December 2006, subjected her to race, national origin, gender and age discrimination. Mandengue also contends that Robert Glazier ("Glazier"), who in December 2006 replaced Gill as her supervisor, "subjected Plaintiff to the same things as Gill did." *Id.* ¶¶ 35, 36.

Mandengue alleges that during her training, though before Gill became her supervisor, Gill ignored her but paid close attention to her co-worker, Merideth,[1] who is white. *Id.* ¶¶ 16 - 20; 46 - 51; 57 - 62. Mandengue claims that when she complained about being ignored to her supervisor, who at that time was Jennifer Franey ("Franey"), she found out that Gill had written a negative report about her. *Id.* ¶¶ 21 - 23, 51 - 53, 62 - 64. Mandengue contends that "the situation worsened" in August 2005, after Franey left and Gill became her new supervisor. *Id.* ¶ 25. Mandengue alleges that Gill ridiculed her during weekly Monday meetings by making unpleasant jokes about being from Cameroon, the way that she talked, and the way that she dressed. *Id.* ¶¶ 13; 28 - 29; 69 - 70. Mandengue contends that Gill took business and leads away from her and joked to a colleague that she used voodoo on customers. *Id.* ¶¶ 30, 34, 71. Mandengue states that at some point in 2006 she went to Human Resources because she "could not take it anymore." *Id.* ¶ 33. Gill resigned from his position and left ADT in December 2006. *Id.* ¶ 35.

Mandengue also alleges that Glazier, who became her new supervisor in December 2006, "subjected Plaintiff to the same things as Gill did." *Id.* ¶¶ 35, 36. Mandengue contends that after

---

[1] Merideth's last name does not appear in the complaint or opposition brief.

2

she spoke with Human Resources, Glazier retaliated against her when she reassigned two of her contracts to other sales representatives, "charged back" the contracts of two customers, cancelled a contract with a customer "just to reduce her production," and significantly reduced Mandengue's "ASAP leads." *Id.* ¶¶ 81 - 86. On September 26, 2007, ADT terminated Mandengue. *Id.* ¶¶ 40, 88.

On April 16, 2008, Mandengue filed a charge of discrimination with the EEOC. *Id.* ¶ 7; Pl.'s Mot. to Dismiss Ex. 1. Mandengue filed this complaint on November 19, 2009. ADT moves to dismiss Mandengue's complaint with prejudice, asserting that Counts I, III and IV were untimely filed and that Counts II, V and VI fail to state viable claims of discrimination and retaliation.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the FRCP authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted, and a Rule 12(b)(6) motion therefore tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual

allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

Where a defendant seeks to dismiss a civil rights complaint, a court "must be especially solicitous of the wrongs alleged" and "must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*" *Edwards*, 178 F.3d at 244 (quoting *Harrison v. U.S. Postal*

*Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis in original); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

## ANALYSIS

I.   **Title VII Claims (Counts I, III and IV)**

Defendant ADT asserts that Counts I, III and IV in Mandengue's complaint alleging race, gender and national origin discrimination under Title VII should be dismissed because she did not timely file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In order to maintain an action under Title VII, a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1). This period is extended to 300 days in cases such as this one, "when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)). Mandengue filed her EEOC charge on April 16, 2008; thus, she could not prevail on any claim under Title VII based upon misconduct alleged to have occurred before June 21, 2007. Def.'s Mot. to Dismiss, Ex. 1. Mandengue's complaint states that Gill resigned his position in December 2006. Thus, Mandengue cannot prevail upon her Title VII claim because all her allegations as to Gill's discriminatory conduct happened before he resigned from his position in December 2006, which was approximately 500 days before Mandengue filed her EEOC charge.

In her Opposition brief, Mandengue appears to make something akin to a "continuing violation" argument, as she contends that her complaint incorporates by reference the conduct of both Gill and his replacement supervisor, Glazier. Pl.'s Opp. at 6. Mandengue seems to assert that as long as her allegations as to Glazier fall within the 300 day time period, her allegations as to Gill are not time-barred. *See id.* ("The combined tenure of these individuals as Plaintiff's

supervisors spans most of her time with [ADT], up to and including her termination, in September 2007. Defendant asserts, and Plaintiff does not dispute that she filed a charge of discrimination in April 2008, which is within the statutory period."). Mandengue is mistaken as to how the statute of limitations applies under Title VII. As explained above, a charge must be filed "within three hundred days *after the alleged unlawful employment practice occurred.*" 42 USCS § 2000e-5 (emphasis added). As the Supreme Court explained in *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980), the proper timeliness inquiry is determining the date of the discriminatory acts, not the time at which the consequences of the acts became most painful. Furthermore, the United States Court of Appeals for the Fourth Circuit holds that "[a] series of discriminatory acts will delay the deadline for suing with respect to the earliest acts in the series only if their character was not apparent when they were committed but became so when viewed in the light of the later acts." *Emmert v. Runyon*, 1999 U.S. App. LEXIS 8264, at *16 - 17 (4th Cir. Apr. 29, 1999). A plaintiff who knows after each act that the act was discriminatory and had harmed her may not sue on all the discriminatory acts within the statutory period that applies to the last act. *Id.* Here, Mandengue obviously felt that Gill discriminated against her during the time he supervised her, as evidenced by Mandengue's decision to speak with Human Resources when she "couldn't take it anymore." Accordingly, ADT's Motion to Dismiss Counts I, III and IV is granted to the extent that those causes of action are based upon Gill's misconduct.[2]

## II. Race Discrimination Claims (Count II)

---

[2] Count II is substantively identical to Count I, but it is brought under 42 U.S.C. § 1981 rather than Title VII. "In Maryland, the statute of limitations for employment discrimination suits brought under 42 U.S.C. § 1981 is three years." *Ingram v. Balt. Gas & Elec. Co.*, No. Civ. A. CCB-02-2869, 2004 U.S. Dist. LEXIS 2853, at *7 (D. Md. Feb. 25, 2004). Thus, Mandengue's allegations of race discrimination under 42 U.S.C. § 1981 were timely filed.

ADT contends that Mandengue fails to state a claim of race discrimination under 42 U.S.C. 1981. The elements for claims of workplace discrimination are the same under both § 1981 and Title VII. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n.1 (4th Cir. 2004). In order to set forth a prima facie case of race discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class received more favorable treatment. *See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). It is undisputed that Mandengue is a member of a protected class and that she suffered an adverse employment action when she was fired, and ADT does not make any contention that Mandengue's job performance fell below an acceptable level. Thus, ADT only challenges whether Mandengue sufficiently alleges that other employees who were not African-American were treated better than she was. In her complaint, Mandengue generally contends that ADT treated her "less favorably than the Caucasian employees it employed," and specifically alleges that during training Gill ignored her and focused his attention solely on a white coworker named Merideth. Compl. ¶ 45, 48. This Court finds that these claims are sufficient to state a plausible claim of race discrimination. Accordingly, ADT's Motion to Dismiss Count II for failure to state a claim is denied.

### III. Retaliation Claim (Count V)

ADT contends that Mandengue's complaint fails to state a claim of retaliation. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity, (2) her employer acted adversely against her, and (3) the protected activity was causally connected to the adverse action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208,

218 (4th Cir. 2007) (citing *Beall v. Abbott Labs*, 130 F.3d 614, 619 (4th Cir. 1997)). Mandengue alleges that after Gill became her manager, he made numerous jokes in meetings about the fact that she was from Cameroon, how she talked, and how she dressed. Compl. ¶¶ 28 - 29. Mandengue contends that Gill took business away from her. Compl. ¶ 31 - 32. Mandengue states that she subsequently went to Human Resources because she "could not take it anymore," and that ADT "took actions against her after she went to HR." *Id.* ¶ 33, 80. Though it is unclear how much time elapsed between when Mandengue went to Human Resources and when ADT terminated her, there is no dispute that she was subjected to an adverse action after speaking with Human Resources. Terminating an employee after she complains to Human Resources about being the victim of discriminatory conduct is precisely the kind of adverse action that could have a chilling effect and dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). Accordingly, ADT's Motion to Dismiss Count V for failure to state a claim is denied.

**IV.     Age Discrimination Claim (Count VI)/ Leave to Amend**

ADT asserts that Mandengue's complaint fails to state a claim of age discrimination under the Age Discrimination in Employment Act. In order to allege a prima facie case of discriminatory discharge under the ADEA, a plaintiff must assert that she (1) is a member of the protected class, i.e. is at least 40 years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) was replaced by or treated less favorably than someone who is either outside the protected class or "substantially younger" than she is. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Hill v. Lockheed*

*Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). In her complaint, Mandengue states that she was forty-nine years old when ADT terminated her and there is no dispute that she suffered an adverse action. Compl. ¶ 92. Mandengue offers nothing more than a conclusory assertion, however, that "upon information and belief, a significantly younger employe[e] replaced Plaintiff." *Id.* ¶ 94. Furthermore, Mandengue does not allege that her replacement was less qualified than she was for the position. Under *Twombly*, such conclusory allegations are insufficient to state a claim for relief. *See* 550 U.S. at 555. Thus, Count VI as it is currently worded does not allege a prima facie case of age discrimination.

In her Opposition brief, however, Mandengue requests leave to amend her complaint (Paper No. 10). Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A court should deny a motion to amend "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks and citation omitted and emphasis original). As an initial matter, this Court has granted ADT's Motion to Dismiss as to Counts I, III and IV, and denied ADT's Motion to Dismiss as to Counts II and V. Thus, the only remaining claim is Mandengue's age discrimination claim in Count VI. ADT does not challenge Mandengue's motion for leave to amend this claim. Accordingly, Mandengue's request for leave to amend her complaint is granted as to her age discrimination claim in Count VI.

## **CONCLUSION**

For the reasons stated above, Defendant ADT's Motion to Dismiss (Paper No. 5) is GRANTED as to Counts I, III and IV and DENIED as to Counts II and V, and Plaintiff

Mandengue is GRANTED leave to amend the complaint as to Count VI within ten (10) days of this Order.

A separate Order follows.

Dated: June 3, 2010

/s/ _Richard D. Bennett_

Richard D. Bennett
United States District Judge